IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY BUTLER-BURNS,

    Plaintiff,                                           Case No. _____

v.

CITY COLLEGES OF CHICAGO,

    Defendant.

## COMPLAINT

Plaintiff BEVERLY BUTLER-BURNS ("Plaintiff"), by and through her attorneys, alleges the following against Defendant CITY COLLEGES OF CHICAGO "(CCC" or "Defendant"):

## INTRODUCTION

1. This is an action for age and race discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981").

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §1331 and 1343.

3. Venue is proper in the Court pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged in this Complaint occurred in the Northern District of Illinois.

## THE PARTIES

4. Plaintiff, an African-American resident of Cook County, was employed by Defendant from November 29, 2010 until her termination on September 25, 2014. At the time of

her termination from her full-time position as a Labor & Employee Relations Specialist in Defendant's district office, she was 60 years old.

5. Defendant is a network of seven state-sponsored community colleges throughout the Chicagoland area.

## FACTUAL ALLEGATIONS

6. Plaintiff was hired by Defendant on November 29, 2010 as a part-time Program Director at the Harold Washington Workforce Institute.

7. On July 16, 2012 she transferred to Defendant's department of Workforce & Economic Development, also as a part-time Program Director.

8. In December 2012 she was promoted to a full-time Labor & Employee Relations Specialist position at Defendant's district office where she remained until her termination. She met all of the job qualifications for this position throughout her tenure, including a Masters degree in Human Resources Management & Development, as well as former positions at major corporate employers such as Coca-Cola, CNA, and Sherwin-Williams.

9. Plaintiff's principal duties and responsibilities as a Labor & Employee Relations Specialist included investigating employee relations complaints and conducting training. She was handpicked to revise, redesign, customize and lead the training initiative for Defendant's new Time and Attendance Policy in August of 2013 due to internal issues the payroll department was having in rolling out the training. She successfully managed the ongoing roll-out of that program which was eventually to be delivered to all employees and was the lead trainer at the time of her termination.

10. Plaintiff also volunteered to develop and lead management training for Defendant because of her background in this area. This training program, rolled out in late November 2013 and renewed in early 2014, received uniformly high marks.

11. At no time throughout Plaintiff's tenure with Defendant was she ever told that she was not qualified to perform the functions of her job or that her work performance was deficient in any way.

12. During Plaintiff's last 18 months in her position, Defendant employed three other Labor & Employee Relations Specialists in its district office in addition to her, two of whom had just been hired the previous year. All were white and significantly younger than Plaintiff: Konstantina Christopoulos (white, early 30s), Sarah Levee (white, mid-30s), and Leia DeVita (white, late 20s).

13. Of the four Labor & Employee Relations Specialists in her office, Plaintiff had the longest full-time tenure in the position and the most overall labor relations experience.

14. Yet, despite Plaintiff's qualifications and valuable contributions to the Labor Relations department, she was excluded from assignments given to the younger, non-African-American members of the team. For example, all of the younger, white Labor & Employee Relations Specialists were allowed to serve as hearing officers for employee disciplinary hearings except Plaintiff, even though she had the most experience and repeatedly asked her manager to assign grievance hearings to her based on her background with unions and grievances. Plaintiff was never given any explanation for why she was not assigned bargaining or grievance hearings.

15. Furthermore, despite her success with the management training program, Plaintiff was replaced by Ms. Levee who was given a leading role in the delivery of the program shortly

after her hire. Plaintiff was also bypassed by Ms. Levee to work directly one-on-one with the Vice-Chancellor, Stephanie Tomino (non-Black).

16.  In addition to having her duties eroded in favor of younger, non-Black peers, Plaintiff was also paid less than Ms. Levee, her younger, white counterpart. For example, she learned after her termination that Ms. Levee was hired into the same position at a starting salary of $72,000 -- $12,000 (20%) more than Plaintiff was earning after already being in the same job.

17.  In September 2014, Defendant announced that it needed to eliminate one Labor & Employee Relations Specialist in the district office. Instead of retaining Plaintiff, who had been in the job on a full-time basis longer than any of her peers and had been employed by Defendant considerably longer than the two newest employees who had been hired only a year earlier, Defendant chose to retain the three youngest employees in the department, and to terminate instead the only African-American employee holding that job who was also close to thirty years older and only eight (8) months from pension eligibility. Plaintiff was not given any explanation for Defendant's decision to select her over her colleagues.

18.  Less than two months after this RIF, Defendant promoted Ms. Levee into a newly created position in the same department with a salary of $85,000 -- $23,500 (38%) higher than Plaintiff was being paid when she was terminated.

19.  Within two weeks after her termination, Plaintiff applied for an open position of District Director-Human Resources with Defendant. She was never interviewed for or offered the position.

20.  In the Fall of 2014, shortly after Plaintiff's termination, Defendant posted an opening for the position of Labor & Employee Relations Specialist.

21. In July 2015, Defendant hired Nicole Dax (white, age 29) as a Labor & Employee Relations Specialist.

## PROCEDURAL REQUIREMENTS

22. Plaintiff filed a timely charge of age and race discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit A, which encompasses the allegations contained in this Complaint.

23. At Plaintiff's request, the EEOC issued a Notice of Right to Sue, attached hereto as Exhibit B, which Plaintiff received on January 12, 2016.

24. The Complaint is being filed within 90-days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. Accordingly, Plaintiff has met all procedural prerequisites to bringing the present action.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

25. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

26. The ADEA prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1).

27. Plaintiff was compensated less than her younger peers holding the same position, in violation of the ADEA. 29 U.S.C. §623(a).

28. At the time of her termination, Plaintiff was 60 years old, the oldest of the four Labor & Employment Specialists in Defendant's district office. The three employees retained

5

instead of her were significantly younger, and had less tenure with Defendant and less overall experience.

29. Defendant selected Plaintiff for termination instead of her much younger and lesser tenured colleagues on the basis of her age, in violation of the ADEA. 29 U.S.C. §623(a).

30. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages.

31. Defendant willfully engaged in the discriminatory conduct described herein.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

32. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

33. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. §2000e-2(a)(1).

34. Plaintiff was compensated less than her white peers holding the same position, in violation of Title VII.

35. Plaintiff was the only African-American Labor & Employment Specialist in Defendant's district office who was selected for termination. The three white employees retained instead of her had less tenure with Defendant and less overall experience.

36. Defendant selected Plaintiff for termination instead of her white and lesser tenured colleagues on the basis of her race, in violation of Title VII.

37. As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages.

38. Defendant engaged in the discriminatory conduct described herein with malice or reckless indifference to Plaintiff's federally protected rights.

6

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

39.     Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

40.     42 U.S.C. §1981 of the Civil Rights Act of 1866 ("Section 1981") prohibits an employer from discriminating against an employee on the basis of her race.

41.     Plaintiff was compensated less than her white peers holding the same position, in violation of Section 1981.

42.     Plaintiff was the only African-American Labor & Employment Specialist in Defendant's district office who was selected for termination.  The three white employees retained instead of her had less tenure with Defendant and less overall experience.

43.     Defendant selected Plaintiff for termination instead of her white and lesser tenured colleagues on the basis of her race, in violation of Section 1981.

44.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered damages.

45.     Defendant engaged in the discriminatory conduct described herein with malice or reckless indifference to Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Enter a judgment that the conduct of the Defendant alleged herein violates the laws of the United States;

B.     Award Plaintiff all back pay, front pay, liquidated damages, compensatory damages, punitive damages, benefits, pre-judgment interest, and any other remuneration to which she would have been entitled but for Defendant's unlawful conduct;

7

C.	Award Plaintiff the costs of this action, including reasonable attorneys' fees, expert fees, and any other costs reasonably incurred in the litigation of this matter;

D.	Award Plaintiff such other and further equitable, injunctive and legal relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages triable in this action.

Dated: April 6, 2016	Respectfully submitted,

BEVERLY BUTLER-BURNS


By ___s/Brenda H. Feis_____
	One of Her Attorneys

Brenda H. Feis
FEIS GOLDY LLC
161 N. Clark Street
Suite 4700
Chicago, IL 60601
(312) 523-2200
bfeis@feisgoldy.com